RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0076p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee/Cross-Appellant,*

                                                             Nos. 07-6215/6286
           *v.*

COREY L. GUTHRIE,
           *Defendant-Appellant/Cross-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 05-00139—Jennifer B. Coffman, Chief District Judge.

Argued: January 22, 2009

Decided and Filed: March 2, 2009

Before: MARTIN and MOORE, Circuit Judges; GWIN, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Patrick J. Renn, LAW OFFICES, Louisville, Kentucky, for Appellant. Monica Wheatley, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Patrick J. Renn, LAW OFFICES, Louisville, Kentucky, for Appellant. Monica Wheatley, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

_____

## OPINION
_____

GWIN, District Judge. Defendant-Appellant Cross-Appellee Corey L. Guthrie ("Guthrie") appeals his conviction for one count of car-jacking in violation of 18 U.S.C. § 2119; one count of discharging a firearm during a crime of violence in violation of

---

[*]The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

1

18 U.S.C. § 924(c); one count of possession of a sawed-off shotgun in violation of 18 U.S.C. §§ 5861(d) and 5871; and one count of possession of firearms by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). A jury convicted Guthrie on all four counts. Plaintiff-Appellee Cross-Appellant United States of America cross-appeals Guthrie's sentence. The district court sentenced Guthrie to 180 months incarceration on Count 1 (carjacking) and on Count 4 (possession of firearms by a felon) and to 120 months imprisonment on Count 3 (possession of a sawed-off shotgun), all to be served concurrently. Further, the district court sentenced Guthrie to 120 months imprisonment on Count 2 (discharging a firearm during a crime of violence), to be served consecutively to the other counts. In total, the district court sentenced Guthrie to 25 years of imprisonment.

With his appeal, Guthrie argues that the district court erred by: (1) permitting the Assistant United States Attorney to speak with the victim-witness during her cross-examination; (2) permitting the introduction of audio recordings of 911 calls; (3) permitting the introduction of video recording of a police pursuit; (4) refusing to issue a writ to produce a witness at trial; (5) instructing the jury on the wrong standard for "intent to cause death or serious bodily injury"; and (6) denying Guthrie's motions for judgment of acquittal on the grounds of insufficiency of the evidence.

With its cross-appeal, the United States of America argues that the district court erred when it varied from the Sentencing Guidelines in sentencing Guthrie. The United States argues that the district court varied from the advisory Sentencing Guidelines range due to the effect of applicable statutory mandatory minimums on the overall sentence and failed to provide an adequate explanation for the sentence.

For the reasons that follow, we **AFFIRM** Guthrie's convictions and his sentence.

**I. Background**

A. Facts

Defendant Guthrie's case stems from his effort to collect monies owed him by a drug distributor.  On May 3, 2005, Ronald Kemp and Defendant Corey Guthrie arrived at the apartment of Dominique Ellis in search of money, allegedly owed to them by Ellis.  Ellis lived in the apartment with his girlfriend, Shavonne Williams, and her two children.  Kemp and Guthrie were armed when they arrived; they carried a .22 caliber semi-automatic pistol and a sawed-off shotgun.  According to Kemp, who later cooperated and testified against his co-defendant, Guthrie held the shotgun while Kemp kicked in the door of the apartment.  Also according to Kemp, Guthrie then returned the shotgun once Kemp and Guthrie entered the apartment.  At the time of entry, Williams and the children were asleep; Guthrie's target, Dominique Ellis, was absent.  Kemp pointed the shotgun at Williams and demanded to know where Ellis' money was located.  Meanwhile, Kemp and Guthrie searched the room for the money.  Unsuccessful in his attempt to locate the money, Kemp ordered Williams to call Ellis. Williams complied and Kemp demanded that Ellis bring money to Kemp and Guthrie and threatened that everyone in the apartment would otherwise be killed.

Kemp and Guthrie then escorted Williams out of the apartment.  Kemp ordered Williams into her car.  Holding the shotgun, Kemp sat in the front seat, while Guthrie sat in the back and Williams drove.  In a conversation with Ellis during the drive, Kemp told Ellis that they would kill Williams if they did not get $5,000.  Ellis called 911 and reported that his girlfriend had been abducted.  Shortly thereafter, police began to pursue the car.

The high speed pursuit lasted approximately 35 minutes and spanned 30 miles.  At one point, when law enforcement officers attempted to block the vehicle in an effort to stop it, Kemp leaned out of the window and fired the shotgun into a state trooper's cruiser.  During the pursuit, Guthrie threw the .22 caliber semi-automatic pistol from the vehicle; it was later recovered.  At one point early in the pursuit, a police dispatcher called Williams on her cell phone to inquire if she was in danger.  Williams replied that

she was safe and had not been abducted, that her phone battery was dying, and that her meddling grandmother must have called the police. Later in the chase, Kemp ordered Williams to call the police and tell them to back off. Williams complied, screaming that if the police did not back off, she would be killed. Finally, a police vehicle struck the pursued vehicle to end the chase. Once the vehicle that was being driven by Williams had stopped, Kemp fled on foot; police officers subdued and then arrested him. Guthrie was arrested at the vehicle.

## B. Procedural History

On November 23, 2005, the Government secured an indictment charging Corey Guthrie and Ronald Kemp with four counts: carjacking, discharging a firearm during a crime of violence, possession of a sawed-off shotgun, and possession of firearms by a convicted felon. Kemp pleaded guilty. Guthrie proceeded to trial.[1] The district court severed the counts at trial, so the jury reached its verdict on all of the other counts before resolving the felon in possession of a firearm charge (Count 4). The jury convicted Guthrie on all four counts.

At the sentencing hearing, the United States argued for a low-end Guidelines sentence of 360 months imprisonment for Counts 1, 3, and 4, in addition to the 10-year mandatory consecutive minimum sentence for Count 2, for a total sentence of 480 months imprisonment. In response, the Defendant argued for a sentence of 25 years (300 months). The district court agreed that the Guidelines recommended a sentence of 360 months to life and that Count 2 required a mandatory minimum consecutive sentence of 10 years. After considering all the sentencing factors, the district court sentenced Guthrie to 25 years (300 months) imprisonment. The district court imposed a sentence of 180 months imprisonment each on Counts 1 and 4 and 120 months imprisonment on Count 3, all to be served concurrently, and 120 months imprisonment on Count 2, to be served consecutively. With this sentence, the district court satisfied the mandatory minimum required sentences but did not sentence within the Guidelines range.

---

[1]Kemp testified against Guthrie at trial and was sentenced to 138 months imprisonment.

## II.  Analysis

A. Defendant-Appellant Guthrie's Issues on Appeal

Defendant-Appellant Cross-Appellee Guthrie raises six issues on appeal, arguing that the district court erred by: (1) permitting the Assistant United States Attorney to speak with the victim-witness during her cross-examination; (2) permitting the introduction of audio recordings of 911 calls; (3) permitting the introduction of video recording of a police pursuit; (4) refusing to issue a writ to produce a witness at trial; (5) instructing the jury on the wrong standard for "intent to cause death or serious bodily injury"; and (6) denying Guthrie's motions for judgment of acquittal on the grounds of insufficiency of the evidence.

*1. Allowing the Victim to Speak with the Prosecutor During Cross-Examination*

Defendant Guthrie first argues that the district court erred by "improperly and abruptly halting" the cross-examination of Shavonne Williams, the victim, in order to recess for the day, and then permitting the prosecutor to speak to the witness during the recess, before the conclusion of Williams's cross-examination. Guthrie characterizes this error as a failure to sequester the witness and a violation of his Sixth Amendment right to confront his accuser.

Guthrie, however, grossly mischaracterizes the recess taken during Williams' testimony.  Rather than "improperly and abruptly halting" the cross-examination, the district court merely called a routine recess at the end of a day of trial.  The district court allowed defense counsel to finish his line of questioning.  The district court called the recess after asking whether the defense was at an appropriate transition point.  Although the court then allowed two prosecution witnesses to testify before calling an end to the day's proceedings, they were brief witnesses with valid reasons necessitating their immediate testimony.[2]  More importantly, the possibility of these final two witnesses testifying at the end of the day was not raised until *after* the court had announced the

---

[2]One witness was about to give birth.

recess that interrupted Williams' testimony. Defense counsel did not object to either the interruption of Williams' testimony or the inclusion of the two prosecution witnesses. We find that the district court did not abuse her discretion in interrupting Williams' testimony for an overnight recess and then allowing two brief prosecution witnesses to testify before the recess began.

In considering the district court's decision to allow the prosecutor to speak with Williams while she was still on cross-examination, this Court applies an abuse of discretion standard. *United States v. Rugiero*, 20 F.3d 1387, 1394 (6th Cir. 1994). Guthrie fails to show any abuse of discretion. Moreover, even if the district court had abused its discretion, to reverse on these grounds we must find that the "error was prejudicial to the defendant's receiving a fair trial." *Id.* (citation omitted).

At trial, the district court called the described recess during the cross-examination of Williams, the victim in this case. As she was being dismissed, defense counsel asked "that [the prosecutor] not have any conversation with [the witness]. She is on cross-examination at this point." Defense counsel then formally objected. Guthrie thus sought to prevent Williams from speaking to the prosecutor.

In permitting the prosecutor to speak with the victim while she was still on cross-examination, the district court did not explicitly violate the rule on sequestration of witnesses. Federal Rule of Evidence 615 provides that "at the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of *other witnesses*." FED. R. EVID. 615 (emphasis added). Sequestration orders, even when granted, do not prohibit witnesses from speaking with counsel. *See United States v. Maliszewski*, 161 F.3d 992, 1011-12 (6th Cir. 1998). Defendant Guthrie nonetheless argues that the district court's ruling violated the spirit of Rule 615, because the purposes of the sequestration of witnesses are to prevent witnesses from tailoring their testimony to that of other witnesses; to facilitate the detection of "less than candid" testimony; and to prevent improper attempts to influence witness testimony.

The district court enjoyed discretion to address those concerns by means other than prohibiting the prosecutor from speaking with the witness. In fact, the district court

clearly and correctly articulated the limits of the prosecutor's permitted interaction with the witness by stating: "[The prosecutor] may have conversations with his witness. He may not coach the witness." Despite the trial court's invitation to Guthrie's counsel to make any record that the prosecutor improperly communicated with Williams, Guthrie's attorney asked no questions on this when Williams retook the stand the following day. In overruling the Defendant's objection, the court told defense counsel, "She is going to be here tomorrow morning at 9:00 o'clock, and you may examine her about anything improper in the interim."

Moreover, the Defendant does not allege, much less demonstrate, that anything improper occurred over the recess. Although the court had encouraged the Defendant to inquire as to any impropriety over the break, when the witness resumed her testimony the following morning the Defendant did not even question the victim about the issue. Thus, there is no evidence that the court's failure to prevent the prosecutor from speaking to the victim while she was on cross-examination was "prejudicial to the defendant's receiving a fair trial." *Rugiero*, 20 F.3d at 1394. Therefore, we find that the district court did not abuse its discretion or violate the Confrontation Clause by allowing the prosecutor to speak with the witness over the recess.

*2. Admission into Evidence of Audio Recordings of 911 Calls*

Defendant Guthrie also claims that the district court erred by permitting the introduction of audio recordings of conversations between Williams (the victim) and 911 operators. Guthrie argues that the recordings should not have been admitted because statements made in the recordings were hearsay not falling within an exception. Further, the Defendant says the recordings were unduly prejudicial.

This Court reviews evidentiary rulings by the district court for abuse of discretion. *United States v. Moon*, 513 F.3d 527, 544 (6th Cir. 2008); *United States v. Arnold*, 486 F.3d 177, 184 (6th Cir. 2007) (applying abuse of discretion review to a district court's application of Federal Rule of Evidence 803(d) to 911 calls). In *Arnold*, this Court considered the introduction of 911 calls despite hearsay challenges. We noted that three elements must be shown to satisfy the excited utterance exception: "First, there

must be an event startling enough to cause nervous excitement.  Second, the statement must be made before there is time to contrive or misrepresent.  And, third, the statement must be made while the person is under the stress of the excitement caused by the event." *Arnold*, 486 F.3d at 184 (quoting *Haggins v. Warden, Fort Pillow State Farm*, 715 F.2d 1050, 1057 (6th Cir. 1983)).

At Guthrie's trial, audio recordings of two separate 911 calls were played.  The first call (chronologically as it occurred on the night of the offense) started when a 911 dispatcher called Williams' cell phone inquiring about her safety.  Williams calmly told the 911 operator that she was not in any danger.  She stated that she had not been abducted at gunpoint, that her cell phone battery was dying, and that she was on the expressway.  The district court found that this call did not fall within the excited utterance hearsay exception because the victim sounded calm and because she not only had time to contrive, but did in fact contrive, as all of her responses were lies.  Nonetheless, because the United States did not object, Guthrie played this recording at trial and questioned the victim about it on cross-examination.

The second audio recording played at the trial was a clip of one of several calls made by Williams to the police during the police pursuit of the vehicle.  In these later calls, Williams told police to back off in their pursuit or else she would be killed.  The district court allowed the introduction of the recording of the later call based on the exited utterance hearsay exception.

Assuming that the statements made during the latter 911 call were hearsay,[3] the district court did not abuse its discretion in finding that the statements qualified for admission under the excited utterance exception.  In ruling on the issue, the district court addressed the three elements of the test applied in *Arnold*.  At the conclusion of proof, the district court explained that it was not considering the abduction at the apartment to be the startling event.  Although that event would have been sufficient to trigger the excited utterance exception, the court acknowledged that during the first 911 call, the

---

[3]The audiotape was not transcribed and made a part of the trial transcript.

victim "exhibited a calm demeanor" as she lied to the police. Thus, the statements made during subsequent 911 calls could not have been the result of the stress of being initially abducted at gunpoint - another intervening startling event must have occurred. The court therefore clarified that ". . .[A]nother traumatic event occurred before the second call. And that was that the police had come on the scene . . . So I find that the other traumatic event that occurred was the police chase."

The district court did not abuse its discretion in determining that the police chase acted as an exciting catalyst. Just because the victim was calm after being abducted at gunpoint does not mean she necessarily preserved her calm. The district court could reasonably have found that when the situation turned into a police chase, the victim reacted accordingly. Based on this theory, the initiation of the police chase could have served as a new and independent startling event, sufficient to effectuate the excited utterance hearsay exception.

Moreover, the district court found that admission of the recordings of the 911 calls did not violate Federal Rule of Evidence 403 because "the probative value of th[e] victim's call[s] from the car outweighs any prejudicial . . . effect." "Within the context of Rule 403, '[u]nfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest [a] decision on an improper basis.'" *United States v. Lawson*, 535 F.3d 434, 442 (6th Cir. 2008) (quoting *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006)). The 911 calls were highly probative of the charged carjacking offense and the evidence did not suggest a decision on an improper basis. Therefore, the district court did not abuse its discretion in allowing the introduction of the 911 calls.

*3. Admission into Evidence of Video Recordings of the Police Pursuit*

Defendant Guthrie also claims that the district court erred when it permitted the introduction of video recordings of the police pursuit. Guthrie argues that the recordings should not have been admitted because they were unduly prejudicial. Further, the Defendant claims that the introduction of the video recordings violated his Fifth and

Sixth Amendment rights to due process and a fair trial, as well as the presumption of innocence.

This Court reviews evidentiary rulings by the district court for abuse of discretion. *Moon*, 513 F.3d at 544. Here, Guthrie argues that the video was "overly dramatic" and identified Guthrie as a dangerous criminal to the jury because it showed the Defendant "being pursued by numerous police officers with their lights and sirens blazing." But the Defendant again mischaracterizes the evidence. Contrary to the Defendant's argument, the single video recording shown at trial (without audio) did not depict "essentially an arrest in progress."[4] The video depicted a *crime* in progress - the carjacking for which the Defendant was on trial. Therefore, this evidence did not violate the presumption of innocence, it merely contributed to a finding of guilt. The district court, having viewed the video and heard the parties' arguments, concluded that the video "even if it is slightly cumulative . . . is illustrative and makes [the event] clear – actually, clearer to the jury." In so deciding, the district court did not abuse its "very broad discretion" in determining if the prejudicial danger of the evidence outweighed the probative value. *See United States v. Vance*, 871 F.2d 572, 576 (6th Cir. 1989).

*4. Refusal to Issue a Subpoena Compelling a Witness to Testify on the Defendant's Behalf*

Next, Defendant Guthrie argues that the district court erred by refusing to issue a writ to produce a witness at trial. The Defendant sought to compel Dominique Ellis, Williams' boyfriend, to testify on Guthrie's behalf. With the testimony, Guthrie sought Ellis's admission that Ellis sold drugs out of Williams' apartment. The Defendant argues that Ellis' testimony would have negated the intent element of the charged offense by demonstrating that Guthrie and Kemp arrived at the apartment to settle a debt, not to cause Williams' death or serious bodily injury. At the time of the trial, Ellis was incarcerated on other charges.

---

[4]The Government had video of Guthrie's arrest, but did not seek to introduce that video.

Federal Rule of Criminal Procedure 17(b) governs the issuance of writs of *habeas corpus ad testificandum* and states that a district court "must order that a subpoena be issued for a named witness if the defendant shows . . . the necessity of the witness's presence for an adequate defense." FED. R. CRIM. PRO. 17(b).  This Court reviews the district court's decision regarding the issuance of a writ of *habeas corpus ad testificandum* for abuse of discretion.  *United States v. Rigdon*, 459 F.2d 379, 380 (6th Cir. 1972).  The district court's discretion is "wide," and "a reviewing court should not reverse unless the exceptional circumstances of the case indicate that [the] defendant's right to a complete, fair and adequate trial is jeopardized." *Rigdon*, 459 F.2d at 380 (citations and quotations omitted).

The district court denied the Defendant's request, concluding that Ellis' testimony would only serve the purpose of impeachment on a collateral matter and would be cumulative.  Kemp had also testified about the intent with which the Defendant and Kemp went to the victim's home that night.  Further, the court noted that Kemp had already offered testimony about the drugs at Williams' residence, thereby impeaching Williams' testimony denying the drugs.

This Court finds that even if Ellis would have testified as the Defendant expected, his testimony regarding the presence of drugs in the apartment or a drug debt between himself and Kemp or Guthrie would have been irrelevant to the charged offenses.  The reason why Kemp and Guthrie went to the victim's apartment in the first place is immaterial.  The intent element of the carjacking offense involves the intent when the vehicle is taken.  *Holloway v. United States*, 526 U.S. 1, 8 (1999).  Ellis could provide no evidence as to the intent of Kemp and Guthrie when they abducted Williams at gunpoint and forced her to drive.  As to the value of Ellis as an impeachment witness, it was within the district court's discretion to determine that Kemp had already offered sufficient testimony impeaching Williams and any further such testimony would be needlessly cumulative.  Guthrie has not shown this decision to be an abuse of discretion.

*5. Jury Instructions Concerning the Intent Element of Carjacking*

Defendant Guthrie argues that the district court erred with its jury instruction on Count 1, the carjacking charge. The relevant statute criminalizes the taking of or attempt to take a motor vehicle from another by force and violence or by intimidation, with the intent to cause death or serious bodily harm. 18 U.S.C. § 2119. Guthrie argues that the jury was not properly instructed on the *mens rea* element of the crime, saying that the instructions discussed the element without reference to *when* the defendant must have had the requisite intent. Under 18 U.S.C. § 2119, the Defendant must have had the necessary intent at the time of the taking of the vehicle. *Holloway v. United States*, 526 U.S. 1, 8 (1999).

This Court reviews jury instructions for an abuse of discretion. *United States v. Frost*, 914 F.2d 756, 764-67 (6th Cir. 1990). We will not reverse a jury verdict if the jury instructions accurately reflected the law and were not, when "viewed as a whole, . . . confusing, misleading, or prejudicial." *United States v. Blackwell*, 459 F.3d 739, 764 (6th Cir. 2006); *see also United States v. Blood*, 435 F.3d 612, 623 (6th Cir. 2006).

In the jury instructions, the district court delineated the elements of the offense, including the intent element, "Fourth: That the Defendant 'intended to cause death or serious bodily harm' *when the Defendant took the motor vehicle*." (Emphasis added.) The district court then proceeded to define the terms used in the statutory language. As to the intent element, the instructions said:

> Whether the Defendant "intended to cause death or serious bodily harm" is to be judged objectively from the conduct of the Defendant as disclosed by the evidence and from what one in the position of the alleged victim might reasonably conclude. If you find beyond a reasonable doubt that the Defendant had such an intent, the Government has satisfied this element of the offense.

Despite acknowledging the "accuracy of the court's recitation of the elements of the offense," Guthrie challenges this later explanation of the intent element for failure to include a temporal limitation. By focusing on one paragraph of the instructions, however, the Defendant mischaracterizes the instructions.

Jury instructions must be "viewed as a whole," rather than considered piecemeal. Taken as a whole, the instruction on the offense of carjacking accurately reflected the law. The instruction included the elements of the crime, as well as definitions of the terms in the statute. In listing the elements of the crime, the district court explained that the Defendant must have intended to cause death or serious bodily harm when the Defendant took the vehicle. Therefore, the district court did not commit error with the jury instructions.

*6. Denial of Judgment of Acquittal for Insufficiency of the Evidence*

Defendant Guthrie finally argues that the district court erred in denying Guthrie's motions for a judgment of acquittal due to insufficiency of the evidence as to Counts 3 and 4, relating to Guthrie's possession of the shotgun. Guthrie argues that the only testimony linking the Defendant to the shotgun came from Kemp and that testimony was insufficient for a conviction. Addressing a challenge regarding the sufficiency of the evidence, this Court considers "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States v. Collins*, 78 F.3d 1021, 1030 (6th Cir. 1996). We do not independently assess the credibility of witnesses or the weight of the evidence. *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999).

To convict on Count 3 of the Indictment, the jury must have found that Guthrie had actual or constructive possession of the shotgun used in the offense. Kemp testified that he told Guthrie to hold the gun while he, Kemp, kicked in the door of the apartment upon arrival. Kemp further testified that during the police chase he told Guthrie to hand him the shotgun, which was under the car seat at the time. After Guthrie handed him the gun, Kemp claimed that he attempted to throw the gun out the window when it accidentally went off, firing shots into the back of a state trooper's car. We find that a rational trier of fact could have believed those portions of Kemp's testimony regarding Guthrie's possession of the shotgun beyond a reasonable doubt, and so could have relied on them alone to convict Guthrie of Count 3 of the Indictment.

Count 4 of the Indictment charged Guthrie with being a felon in possession of a shotgun and a .22 caliber semi-automatic pistol. To be found guilty of being a felon in possession, Guthrie need not have possessed both of these firearms - one would suffice. As described above, there was sufficient evidence to find that Guthrie possessed the shotgun. But there was also sufficient evidence that Guthrie possessed the semi-automatic. At trial, Williams testified that she saw Guthrie with the .22 caliber semi-automatic pistol during the abduction. A police officer testified that he saw something thrown from the passenger side of the car during the chase. Police officers also testified that they recovered the .22 caliber pistol from the crime scene, where it was suspected to have been tossed from the vehicle. Viewing the evidence in the light most favorable to the prosecution, this Court finds this evidence sufficient for a rational trier of fact to find Guthrie guilty of Count 4 of the Indictment. Therefore, we find that the district court did not err in denying the Defendant's motions for a judgment of acquittal based on insufficiency of the evidence.

### B. Cross-Appellant United States of America's Issue on Appeal

Plaintiff-Appellee Cross-Appellant United States appeals a sentencing issue, arguing that the district court improperly varied from the recommended Guidelines sentence to compensate for the applicable statutory mandatory minimums and failed to provide an adequate explanation for the sentence.

This Court reviews the district court's sentence under an abuse of discretion standard. *Gall v. United States*, 128 S.Ct. 586, 597 (2007). A sentencing decision will only be reversed if it is unreasonable. *Id*. at 594. Reasonableness review considers both procedural and substantive reasonableness. *Gall*, 128 S.Ct. at 594; *see also United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008). A reviewing court:

> must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.

*Gall*, 128 S.Ct. at 597.  After determining that the sentence is procedurally sound, the reviewing court then considers substantive reasonableness under the abuse of discretion standard.  *Id*.

At Defendant Guthrie's sentencing hearing, the Government argued for a total sentence of 40 years.  The suggested 40-year sentence combined the Guideline recommended minimum 360-month sentence for Counts 1 (carjacking), 3 (possession of the sawed-off shotgun), and 4 (felon in possession with armed career criminal designation) with a 10-year statutory mandatory consecutive minimum for Count 2 (use of a firearm in a violent crime).  In response, the Defendant argued that a total sentence of 25 years, the mandatory minimum, would be sufficient but not greater than necessary.

The district court recognized the recommended Guidelines range to be 360 months to life imprisonment.  The district court also noted that Count 2 required a mandatory consecutive minimum sentence of 10 years.  Next, the district court turned to the § 3553(a) sentencing factors, addressing the Defendant's history and characteristics, the nature and circumstances of the offense, the seriousness of the offense, the need to protect the public and promote respect for the law, the need for deterrence, the potential for rehabilitation, and the need to avoid unwarranted sentencing disparities.  Finally, having calculated the applicable Guidelines range and considered all the § 3553(a) factors, the district court concluded:

> And that brings us up to the possibility of 40 years.  But I'm not going to go that high.  I just think that's too long.  And where I'm looking at is 25 years.  I am – I believe that's sufficient in custody.  That's a very, very, very long time.  I think it takes into account everything I have to take into account.

In particular, the court noted the marginal deterrent effect of a sentence over 25 years. The Defendant was sentenced to 180 months imprisonment on Counts 1 and 4 and 120 months imprisonment on Count 3, all to be served concurrently, and 120 months imprisonment on Count 2, to be served consecutively, for a total of 300 months imprisonment.

With its appeal, the Government challenges the reasonableness of the district court's downward variance from the Guidelines range. The Government argues that the court "effectively reduced the guidelines sentence to compensate for the statutory mandatory minimums" for Counts 2 and 4. In its brief, the Government alleges that "[t]he district court seemed to settle on a sentencing number (twenty-five years) that encompassed the ten-year mandatory consecutive sentence under § 924(c) (Count 2) and the fifteen-year mandatory minimum sentence under § 924(e) (Count 4)." The result, the Government argues, is that "the court nullified Congressional intent about statutory mandatory minimums."

First, this Court considers whether the Government preserved this issue for appeal. At the end of the sentencing hearing, when the district court asked if there were any objections, the prosecutor stated, "Judge, whatever objections I've already made I won't repeat." Earlier in the sentencing hearing, the Government had expressed its position that the correct sentence based on the Guidelines and the statutory mandatory minimums was 40 years. The parties have no obligation to again raise objections already made at the end of a sentencing hearing, especially those customarily raised earlier in the proceeding such as objections to or for departures and variances. *United States v. Vonner*, 516 F.3d 382, 385, 390 (6th Cir. 2008). By earlier arguing for a strict Guidelines sentence, the Government adequately preserved the sentencing issue for appeal.

*1. Franklin Precedent*

In challenging the reasonableness of the sentence, the Government relies on this Court's decision, *United States v. Franklin*, 499 F.3d 578 (6th Cir. 2007). In *Franklin*, we considered the re-sentencing under *Booker* of two defendants convicted of various bank robbery charges. The *Franklin* defendants faced a mandatory consecutive seven year sentence for brandishing a firearm in violation of 18 U.S.C. § 924(c). *Franklin*, 499 F.3d at 583. The sentencing court granted downward variances of 34 months and 22 months below the Guidelines range for the two defendants, explaining the decision: "to

some extent because I feel that adding on a mandatory seven years truly inflates the sentence . . . ." *See id.* (quoting Franklin's sentencing hearing transcript).

In vacating the sentence and remanding for a new sentencing, this Court examined the statutory language establishing the mandatory consecutive minimum, which states that violators of the specific provision "shall" be sentenced to not less than seven years imprisonment "in addition to" the punishment provided for the underlying crime of violence. *Franklin*, 499 F.3d at 583 (quoting 18 U.S.C. § 924(c)(1)(A)). We also considered the Guidelines instruction that mandatory consecutive sentences are to be imposed "independently" of sentences for other counts. *Id.* at 584 (citing U.S.S.G. § 5G1.2(a), (b) and cmt. n.2). Ultimately, this Court held the sentences to be unreasonable because "[w]hen any downward variance of the guideline range is based upon the effect of a mandatory sentence, congressional intent is repudiated, just as if the mandatory sentence itself had been reduced." *Franklin*, 499 F.3d at 584-85. On remand, the district court was instructed to "determine an appropriate sentence for the underlying crimes without consideration of the § 924(c) sentence."

*2. Application of Franklin to Guthrie*

In contrast to *Franklin*, the district court here nowhere suggested that she was trying to negate the mandatory minimum sentence for use of a firearm during a crime of violence, as *Franklin* prohibits. *Franklin*, 499 F.3d at 584-85 (holding that any downward variance *based upon* the effect of a mandatory sentence repudiates congressional intent). The sentencing court in *Franklin* admitted to granting the downward variance from the Guidelines "to some extent because I feel that adding on a mandatory seven years truly inflates the sentence." *Franklin*, 499 F.3d at 583 (quoting Franklin's sentencing hearing transcript). In contrast, the district court in this case gave no such explicit improper explanation. In support of its position, the Government relies on a mere inference rather than on any actual evidence. Govt. Br. at 17 ("The district court *seemed* to settle on a sentencing number (twenty-five years) that encompassed the ten-year mandatory consecutive sentence under § 924(c) (Count 2) and the fifteen-year mandatory minimum sentence under § 924(e) (Count 4).") (emphasis added). District

courts enjoy discretion in sentencing based on their "ring-side perspective on the sentencing hearing and [their] experience over time in sentencing other individuals." *United States v. Poynter*, 495 F.3d 349 (6th Cir. 2007). Accordingly, we do not presume to read the mind of a sentencing judge, on a search for impropriety.

Ultimately, after explicitly considering the correct Guidelines range in light of the § 3553(a) factors, the district court found the total advisory sentence of 40 years to be too long. While it is *possible* that the district court considered the effect of the mandatory sentence, in the absence of any more explicit evidence, we will not impute an improper analysis to a sentencing judge. The sentence was reasonable.

*3. Adequate Explanation*

Finally, the Government argues that the district court sentenced Guthrie without providing an adequate explanation for the sentence. The sentencing court must "set forth enough [of a statement of reasons] to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority." *United States v. Bolds*, 511 F.3d 568, 580 (6th Cir. 2007) (quoting *Rita v. United States*, 127 S.Ct. 2456, 2468 (2007)). In making this argument, the Government discounts the district court's consideration of the parties' arguments, the Presentence Report, and the § 3553(a) factors. Notably, the district court commented on each of the § 3553(a) factors and their applicability to the Defendant. Engaging in these steps allows for reasonable appellate review. *See United States v. Sexton*, 512 F.3d 326, 331 (6th Cir. 2008) (holding a sentencing explanation to be adequate where the sentencing court properly calculated the Guidelines range, understood the advisory nature of the Guidelines, recited and explained all of the § 3553(a) factors, considered the factors and their relevance to the defendant, and acknowledged the parties' arguments).

Based on all those considerations, the district court concluded that a 40-year sentence was too long, but that a 25-year sentence was sufficient. Regarding the final 25-year sentence, the district court explained, "[t]hat's a very, very, very long time. I think it takes into account everything I have to take into account." The court, reflecting

on what sentence would be "just" and would appropriately punish the young Defendant for the acts he committed, determined that "25 years is long enough in this particular case." The district court further explained the choice of 25 years based on the marginal deterrent value of additional punishment when the sentence was already so long. This Court finds that the district court had a reasoned basis and adequately explained its sentence of 25 years, a sentence it deemed sufficient but not greater than necessary to effectuate federal sentencing purposes. That is all the district court is required to do.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the convictions and **AFFIRM** the sentence.