NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0088n.06

Case No. 20-1224

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Feb 11, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| AARON WILLIAM FEIN, | ) | MICHIGAN |
| Defendant-Appellant. | ) | |

---

Before: SILER, GIBBONS, and KETHLEDGE, Circuit Judges.

SILER, Circuit Judge. Defendant Aaron William Fein entered a conditional plea to one count of making a false statement to a federal officer. He now challenges the district court's denial of his motion to suppress incriminating statements he made to law enforcement officers on two separate occasions. He also challenges his sentence for various reasons. We affirm.

I.

*Offense Conduct.* In April 2018, U.S. Customs and Border Protection officers conducted an inspection of Fein's vehicle upon attempted re-entry into the United States after he was refused entry into Canada. They discovered notes concerning pipe bombs, remote triggering devices, and a checklist of components used to assemble a remote detonated explosive device. Several months later, FBI agents and a Michigan State Police bomb squad discovered such components when they searched Fein's bedroom. Subsequently, the FBI opened an investigation of Fein and entered him

into the National Instant Check System ("NICS"), which would alert law enforcement if he attempted to purchase a firearm.

Over the next several months, Fein repeatedly attempted to buy and rent semiautomatic pistols, assault rifles, and ammunition. FBI agents interviewed him about these efforts multiple times. After he was denied at a shooting range, his behavior caused Kent County Sheriff's Office to file a petition in probate court to have Fein involuntarily hospitalized. The probate court agreed that Fein suffered from a mental illness and represented a danger to himself and others. Consequently, he was hospitalized for several days. Upon release, the court ordered Fein to continue outpatient treatment and medication and prohibited him from possessing firearms.

Fein violated the court's order when he drove to Ann Arbor, Michigan to rent a semiautomatic assault rifle and attend a weapon training. The next day, on April 19, 2019, Michigan State Police stopped and detained Fein for violation of the probate court order and turned him over to FBI agents. While in transport, Fein participated in a post-*Mirandized* interview, where he falsely stated that he had not possessed or fired a firearm the day before.

On May 2, 2019, GPS monitoring showed Fein was at Home Depot, where he bought a vise. The FBI suspected that Fein was going to use the vise to convert an eighty percent lower AR-15 into a complete AR-15. The following day, officers took Fein into custody for previously making false statements to the FBI during the April 19 interview. Despite Fein's assertion that there were no firearms or firearm parts in the house, a search revealed an AR-15 assembly parts kit.

Later, Fein's previous cellmate informed officers that Fein instructed him to call his aunt on a non-recorded line in order to ask her to remove a gray box from the residence. Subsequently, the FBI executed a search warrant at the residence and discovered the gray box, containing various

components for the construction of improvised explosive devices. The FBI also seized Fein's desktop computer which had been encrypted.

*Procedural History.* In May 2019, Fein was charged with two counts of making false statements to the FBI, in violation of 18 U.S.C. § 1001(a)(2). Fein moved to suppress the statements. He argued that his *Miranda* waiver on April 19, 2019, was not knowing and voluntary due to his mental impairments. He also argued that he was not given a *Miranda* warning before the May 3, 2019, interview at his home.

During the suppression hearing, Detective Schmitz testified that he read Fein his *Miranda* rights on April 19, 2019, and Fein responded that he understood his rights and was willing to talk to them. Schmitz also stated that he was aware of Fein's mental health history but he appeared rational and coherent. In addition, Schmitz noted that he did not attempt to trick or coerce Fein during the interview. Schmitz knew that Fein had been shooting a gun at a shooting range. When he asked Fein if he had been to any gun shops, Fein initially responded that he had not and then denied having touched any guns.

Schmitz also testified as to the events of May 3, 2019, when he went to Fein's home to execute an arrest warrant. Fein was not aware that there were other law enforcement personnel outside his home or that they had a warrant for his arrest. During questioning, no one touched Fein, brandished or unholstered a weapon, displayed handcuffs, or blocked the door.

When Schmitz asked Fein if he had any guns or gun parts in the house, Fein lied and said he did not. When Schmitz told Fein that lying to him would be a crime, Fein said "I want to talk to my lawyer," and terminated the interview. But a subsequent search, pursuant to a warrant, revealed AR-15 kits, the vise from Home Depot, electronic components to assemble a remote-

control detonator, and a checklist used by the Boston Marathon bombers to make a pressure-cooker bomb.

The district court denied Fein's motion to suppress as to both statements. It concluded that Fein knowingly, intelligently, and voluntarily waived his *Miranda* rights on April 19, 2019. In regard to the May 3, 2019 interview, the court determined that no *Miranda* warning was required because Fein was not in custody when he made the false statement. Shortly after, Fein entered a conditional plea to Count 1 of the indictment.

Prior to sentencing, the probation office prepared a presentence report ("PSR"). Fein's PSR calculated a base offense level of six but recommended a four-level enhancement under USSG § 2B1.1(b)(9)(C) for fraud in violation of a prior judicial order. The PSR also applied a four-level enhancement for possession of a dangerous weapon in connection with the offense, pursuant to USSG § 2B1.1(b)(16)(B), and a two-level enhancement for obstruction of justice under USSG § 3C1.1. A three-level reduction for acceptance of responsibility brought Fein's offense level to thirteen.

During sentencing, the district court addressed Fein's objections to the PSR. First, the district court overruled Fein's objection to the application of the four-level enhancement under USSG § 2B1.1(b)(9)(C) for violation of a prior judicial order. The court agreed that most of the case law addressing the enhancement arose in the context of financial crimes but noted that Black's Law Dictionary definition of fraud includes "knowing concealment of a material fact." The court concluded that Fein's fraudulent statements to the FBI officers were meant to conceal his possession of firearms, in violation of the Kent County Probate Court's order. Also, the court sustained Fein's objection to the four-level enhancement pursuant to USSG § 2B1.1(b)(16)(B) for possession of a dangerous weapon and reduced his recommended offense level by four.

Further, the district court found a two-level enhancement pursuant to USSG § 3C1.1 did not adequately reflect the seriousness of the defendant's obstructive conduct and departed upward an additional two levels. The court also found Fein's possession of firearm parts with the intent to construct an assault rifle was not taken into account in the guidelines as scored and applied a two-level upward variance, pursuant to USSG § 5K2.0(a)(2)(B). Fein's total offense level of sixteen with a criminal history category of I resulted in a guidelines range of 21 to 27 months. In the end, the court sentenced Fein to 27 months' imprisonment.

## II.

Fein raises several issues on appeal concerning the district court's denial of his motion to suppress and 27-month sentence imposed. Each is taken in turn, and none requires reversal.

## A.

*Standard of Review*. When reviewing a district court's decision on a motion to suppress, this court reviews factual conclusions for clear error and conclusions of law de novo. *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010) (citation omitted). The question of whether a waiver is knowing and intelligent is "a mixed question of law and fact" that is reviewed de novo. *Lott v. Coyle*, 261 F.3d 594, 610 (6th Cir. 2001). Where, as here, the motion was denied, the court "must consider the evidence in the light most favorable to the government." *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) (en banc) (citation omitted).

*April 19, 2019 Statements*. First, Fein argues that the district court should have suppressed the statements he made to the officers after they intercepted him at a firing range because he did not knowingly and intelligently waive his *Miranda* rights.

"Statements made in response to custodial police interrogation must be suppressed unless the suspect first waived his *Miranda* rights 'voluntarily, knowingly and intelligently.'" *United*

*States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010) (quoting *Colorado v. Spring*, 479 U.S. 564, 572 (1987)). Waiver is voluntary when "it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). It is knowing and intelligent when it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

There are three requirements for finding statements to be involuntary: (1) the police activity was "objectively coercive"; (2) the coercion in question was "sufficient to overbear defendant's will"; and (3) the alleged police misconduct "was the crucial motivating factor in the defendant's decision to offer the statements." *United States v. Luck*, 852 F.3d 615, 622 (6th Cir. 2017) (quoting *United States v. Binford*, 818 F.3d 261, 271 (6th Cir. 2016)).[1]

Here, Fein bases his argument solely on his history of mental health issues that he believes rendered his waiver invalid. However, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'" *Colorado v. Connelly*, 479 U.S. 157, 167 (1986); *accord United States v. Newman*, 889 F.2d 88, 94 (6th Cir. 1989) (finding evidence of an impaired "cognitive or volitional capacity is never, by itself, sufficient to warrant the conclusion that his confession was involuntary for purposes of due process; some element of police coercion is always necessary."). Fein presents no evidence of "the crucial element of police overreaching." *Connelly*, 479 U.S. at 163. He does not identify any acts by the police that went beyond normal police-interrogation tactics. *See id.* at 163 n. 1 (identifying acts such as holding gun to defendant's head, interrogating for 36 hours without sleep, or interrogating for several days with little food as

---

[1] *Luck* describes the test for determining whether a confession was involuntary under the due process clause. Because "[t]he test of whether a Miranda waiver is voluntary is essentially the same as the test for whether a confession is voluntary[,]" this case applies to Fein's argument. *United States v. Redditt*, 87 F. App'x 440, 4445 (6th Cir. 2003); *see also Connelly*, 479 U.S. at 169.

examples of police overreach).  Thus, absent any evidence of actual coercion, the district court reasonably concluded that Fein's statements to the police were voluntary.

Further, the district court properly found that Fein knowingly and intelligently waived his *Miranda* rights.  The court was able to rely upon an audio recording of the interview and Schmitz's testimony that Fein appeared competent during the interrogation.  It noted that Fein had a conversational tone, seemed to understand his situation, and responded appropriately to questions.  In addition, the court emphasized that Fein is an intelligent individual who knew and understood his rights.

Thus, it is clear that the district court considered Fein's mental health as one factor of the totality of the circumstances.  There is no evidence of coercive activity on the part of law enforcement and, thus, the United States carried its burden of demonstrating by a preponderance of the evidence that the defendant's waiver of rights and his responses to law enforcement questions were made knowingly, intelligently, and voluntarily.

*May 3, 2019 Statements*.  Fein next argues that his statements made to the officers when they came to arrest him at his residence should have been suppressed because the officers questioned him without first apprising him of his *Miranda* rights.  Specifically, he claims that the circumstances surrounding the interview were "tantamount to a formal arrest" suggesting that he was in custody for purposes of *Miranda*.

Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 468–70 (1966), police officers must inform a custodial suspect that he has a right to remain silent and to have counsel present.  "[F]or *Miranda* to apply, the suspect must either be actually taken into custody or the restraint on his freedom must rise to the level associated with a formal arrest."  *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998) (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).  To determine whether a

suspect is in custody, courts focus on the objective circumstances surrounding the interrogation to assess "how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action." *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (quoting *Stansbury v. California*, 511 U.S. 18, 325 (1994)). "Several factors guide the inquiry: the location of the interview; the length and manner of questioning; whether the individual possessed unrestrained freedom of movement during the interview; and whether the individual was told [he] need not answer the questions." *Id.*

First, despite the defendant's assertion, this court has explained that police encounters in a person's home typically do "not rise to the kind of custodial situation that necessitates *Miranda* warnings" because the home

> presumably is the one place where individuals will feel most unrestrained in deciding whether to permit strangers into the house, in moving about once the police are there, in speaking as little or as much as they want, in curbing the scope of the interview or in simply asking the officers to leave.

*Id.* at 465–66 (quotations omitted). Thus, the fact that Fein was at his residence during the interview is a factor that weighs against a custodial finding.

Not every in-home interrogation is deemed custodial but Fein, like the defendant in *Panak*, fails to identify circumstances that transformed his home "into an interrogation cell." *See id.* at 466. In fact, Fein concedes that the interview only lasted a few minutes and during that time he did not know the officers had a warrant for his arrest.

Schmitz testified that Fein remembered him when he knocked on his bedroom door. Even though other law enforcement personnel were outside the home during the interview, Fein was not aware of their presence or that they had a warrant for his arrest. He also testified that Fein went to his bedroom to close his computer, highlighting Fein's freedom of movement. No one touched Fein, brandished or unholstered a weapon, displayed handcuffs, or blocked the door. After Fein

told the officers that he did not have any guns or gun parts in the house, Schmitz warned Fein that lying to him would be a crime. In response, Fein explicitly stated, "I want to talk to my lawyer," and terminated the interview. All of these facts weigh heavily against a finding of custody.

Fein suggests that the fact that the officers had a warrant for his arrest and had his house surrounded during the interview are sufficient to determine that he was in custody. The fact that the officers possessed a warrant for his arrest does not bear on our analysis because Fein made self-incriminating statements before he knew about the warrant. *See United States v. Reynolds*, 762 F.2d 489, 493 (6th Cir. 1985) (holding that the existence of arrest warrants was irrelevant to the custody analysis because the warrants were unknown to the defendants).

Moreover, Fein overstates the importance of the fact that the agents did not explicitly tell him that he could refuse to answer questions and could terminate the interrogation at will. This court has never held that such admonitions are a necessary condition of a noncustodial interrogation. *See Panak*, 552 F.3d at 467. "It would be strange, indeed, to say that a telltale sign of whether an individual must be *Mirandized* is whether the officer gave the individual one of the *Miranda* warnings—that [he] need not answer the questions." *Id.* This factor could affect the outcome of the custody analysis in a closer case, such as when an interrogation occurs in a police station or when the law enforcement agents threaten the detainee. *See id.* at 468–69. But that is not present here.

In sum, the district court did not err when it determined that Fein was not in custody prior to receiving the *Miranda* warnings. As a result, the denial of Fein's motion to suppress is affirmed.

B.

The district court enhanced Fein's sentence by two levels pursuant to USSG § 2B1.1(b)(9)(C) because he possessed and used firearms in violation of a judicial order. USSG

§ 2B1.1(b)(9)(C) provides that: "If the offense involved . . . a violation of any prior, specific judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines . . . increase by 2 levels."

In applying the guidelines, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Moon*, 513 F.3d 527, 539–40 (6th Cir. 2008). The government need only show by a preponderance of the evidence that a sentence enhancement applies. *United States v. Donadeo*, 910 F.3d 886, 901 (6th Cir. 2018).

At issue is the interpretation and application of a guideline provision. "In interpreting the Sentencing Guidelines, the traditional canons of statutory interpretation apply." *United States v. Jackson*, 635 F.3d 205, 209 (6th Cir. 2011). "Our analysis begins with the plain meaning and, if the language is unambiguous, ends there as well." *Perez v. Postal Police Officers Ass'n*, 736 F.3d 736, 740 (6th Cir. 2013). "If the text alone does not admit a single conclusive answer, we can draw on a broader range of interpretive tools." *Id.* (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 11–16 (2011)). Dictionaries can assist. *See, e.g.*, *MCI Telecomms. Corp. v. AT&T Co.*, 512 U.S. 218, 225 (1994).

First, it is unsurprising that the majority of cases where this enhancement applies involve financial fraud, as § 2B1.1 is the primary guideline provision for theft and embezzlement, under the rubric of "Basic Economic Offenses." The Sentencing Commission, however, also prescribed this guideline for false official statements and other offenses. *See* Guidelines Manual, Appendix A. As the district court emphasized, fraud is defined in the statute of conviction as "mak[ing] any materially false, fictitious or fraudulent statement or representation," and as elsewhere to include "knowing concealment of a material fact." *Black's Law Dictionary* (11th ed., West 2019). Moreover, Application Note 8(C) says § 2B1.1(b)(9)(C) should apply where the defendant

"commits a fraud in contravention of a prior, official judicial or administrative warning, in the form of an order, injunction, decree, or process, to take or not to take a specified action." Thus, based on the plain text, commentary, and lack of precedent, we find that § 2B1.1(b)(9)(C) can be applied to non-financial crimes, such as the offense at issue in this case.

Fein also suggests that his fraudulent conduct, which is the underlying offense, did not violate the judicial order because it did not explicitly forbid him from making false statements to law enforcement. It only forbid him from possessing firearms. The district court concluded that "the offense conduct, the defendant made a material false statement to conceal his possession of firearms, which was conduct prohibited by the judicial order" fits within the guideline application. In support, the court relied upon the commentary to § 2B1.1(b)(9)(C), which explains that a defendant "deserves additional punishment" if he "does not comply" with a judicial order because such noncompliance demonstrates his "aggravated criminal intent." USSG § 2B1.1, comment. (n. 8(C)).

Many of our sister circuits have interpreted this guideline broadly but have not faced such a challenge under the same factual circumstances. In *United States v. Nash*, the Fifth Circuit held that § 2B1.1(b)(9)(C) applied even though an agency warning letter did not expressly enjoin the defendant from committing the specific fraudulent conduct for which he later was criminally prosecuted. 729 F.3d400, 404–06 (5th Cir. 2013). In *United States v. Iley*, the Tenth Circuit found that the defendant's "contention that the enhancement does not apply because the administrative order did not explicitly enjoin him from engaging in the fraudulent conduct underlying his offense was 'without merit.'" 914 F.3d 1274, 1285 (10th Cir. 2019) (citing *Nash*, 729 F.3d at 404).

In this case, the judicial order identified the acts of Fein that it sought to prohibit, including using and possessing any firearms. While this order was in force, Fein rented a semiautomatic rifle. When confronted, Fein falsely denied such use or possession. Thus, one can conclude that

Fein's concealment of the firearm is sufficient involvement of the prohibited conduct. And because Fein defied this order, the district court reasonably concluded that he was the type of defendant the enhancement was intended to apply to—that is, one who has "demonstrate[d] aggravated criminal intent." USSG § 2B1.1, comment. (n.8(c)). The district court properly applied the guideline to Fein's sentence.

C.

Finally, Fein claims that his 27-month sentence is substantively unreasonable due to the district court's application of upward departures and variance. This court reviews the substantive reasonableness of the sentence imposed for abuse of discretion. *United States v. Richards*, 659 F.3d 527, 549 (6th Cir. 2011). District courts have wide discretion in fashioning sentences. *United States v. Guthrie*, 557 F.3d 243, 256 (6th Cir. 2009). A sentence may be substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent 18 U.S.C. § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008). In evaluating substantive unreasonableness, the court looks to "the totality of the circumstances, including the extent of any departure or variance from the guidelines range." *United States v. Christman*, 607 F.3d 1110, 1118 (6th Cir. 2010) (quoting *Gall v. United States*, 552 U.S. 38, 51(2007)). While a sentence outside of the guidelines range is not afforded a presumption of reasonableness, neither is it subject to a presumption against reasonableness. *United States v. Herrera-Zuniga*, 571 F.3d 568, 590 (6th Cir. 2009).

*Obstruction of Justice Upward Departure*. While awaiting trial in jail, Fein solicited a cellmate to contact his aunt on a non-recorded phone in order to have her remove a gray box from their basement. It was later discovered during a search of the residence that the box contained

explosive device components. Also, the search revealed that Fein encrypted his desktop computer. Based on these facts, the district court adopted the PSR's recommended two-level enhancement for obstruction of justice under USSG § 3C1.1. But the court found that the enhancement did not adequately reflect the seriousness of the defendant's obstructive conduct and applied a two-level upward departure. Now, Fein argues that the district court's additional departure is unreasonable because he was already assessed two levels for obstruction of justice.

A sentencing court may depart based on a considered factor if the factor is "present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." *Koon v. United States*, 518 U.S. 81, 96 (1996). Here, the district court found Fein's obstruction of justice actions to be serious and aggravating, as he exposed other individuals to potential prosecution for serious offenses. The Supreme Court has recognized that district courts have an institutional advantage over appellate courts in determining whether a case is exceptional or distinguishable from an ordinary case. *See id.* at 98. Thus, the district court did not abuse its discretion in departing two levels based on the same facts used for the obstruction of justice enhancement as long as it determined and set forth why this case presents an exceptional degree of conduct, which it adequately did.

Fein also argues that the departure was unjustified because it was based on "conduct in which no one was injured and he did nothing illegal." The district court properly recognized Fein's conduct as a serious offense that requires consequences. Since we give due deference to the district court's determination that Fein's obstruction of justice was serious to an exceptional degree, we affirm the two-level departure for Fein's obstructive actions.

*Upward Variance*. Finally, Fein argues that the district court erred by imposing a two-level upward variance pursuant to 18 U.S.C. § 3553(a). In support of the upward variance, the district court emphasized specific deterrence as a significant factor and expressly stated that it viewed Fein as a significant risk to the public. In addition, the court considered its role in promoting respect of the law and providing a just punishment, and it considered the seriousness of the offense behavior, as well as relevant conduct.

Fein claims that the district court arbitrarily selected his sentence because it varied upward by "225%" from the guidelines range. Fein states that the court "believed that the 6 to 12 month sentence that resulted after it resolved objections to the PSR was insufficient punishment." However, this court does not apply a rigid mathematical formula using the percentage of departure from the guidelines range "as the standard for determining the strength of the justifications required for a specific sentence." *Richards*, 659 F.3d at 550 (quoting *Gall,* 552 U.S. at 47). Thus, this fact alone does not determine whether Fein's sentence is substantively unreasonable.

Our task is to determine whether a district court's sentence is reasonable, not whether we would have imposed the same sentence in the first instance. Here, it was reasonable for the court to conclude that a weighing of the § 3553(a) factors warranted an upward variance, regardless of whether we would have weighed the § 3553(a) factors differently. Fein has not shown that the district court abused its discretion or that a different sentence was required in his case. *See United States v. Brown*, 579 F.3d 672, 687 (6th Cir. 2009) (noting that a district court's decision not to give a defendant the exact sentence sought did not serve as an adequate basis for appeal). No argument has been presented that would justify substituting our judgment for the judgment of the sentencing court. *See United States v. Collington*, 461 F.3d 805, 811 (6th Cir. 2006).[2]

---

[2] Fein also argues that the district court erroneously departed an additional two levels by applying USSG § 5K2.0(a)(2)(B) but does not offer any specific argument in support. Without further development

III.

Accordingly, the judgment and sentence of the district court are **AFFIRMED**.

---

or any case law or facts cited, this court is not able to properly analyze Fein's appeal as to the court's application of USSG § 5K2.0(a)(2)(B).